IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| MARIO AMBRIS, CHAIYS WHITE, GABRIEL ANTRAMGARZA, JEREMIAH SANCHEZ,<br><br>Plaintiffs<br><br>vs.<br><br>VENANGO COUNTY, MAJOR SMITH, OFFICIAL AND INDIVIDUAL CAPACITY; MICHAEL SCANNELL, OFFICIAL AND INDIVIDUAL CAPACITY; AND JOSEPH JANIDLO,<br><br>Defendants | 1:25-CV-00066-RAL<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>MEMORANDUM OPINION ON DEFENDANTS' MOTION TO SEVER<br><br>ECF NO. 12 |

Plaintiffs[1] are four former inmates at the Venango County Prison ("VCP") in Franklin, Pennsylvania. They commenced this civil rights action against Venango County and three officials employed at VCP: Warden Major Smith, Deputy Warden Michael Scannell, and Corrections Officer Joseph Janidlo. Plaintiffs' Complaint asserts separate Eighth Amendment claims on behalf of each Plaintiff under 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion to Sever the claims of the Plaintiffs to require each to pursue his claims in a separate action. ECF No. 12. For the reasons explained below, the Defendants' motion will be DENIED.[2]

---

[1] Plaintiffs are Mario Ambris, Chaiys White, Gabriel Antramgarza, and Jeremiah Sanchez.

[2] A motion to sever is a non-dispositive pretrial matter properly committed to a magistrate judge for consideration. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *United States v. Cochran*, 682 Fed. Appx. 828, 842 (11th Cir. 2017) (per curiam).

I.      Background

Plaintiffs allege that corrections staff at VCP, including Defendant Janidlo, repeatedly abused and mistreated them and that prison leadership—the warden and deputy warden—ratified, encouraged and, at times, participated in this pattern of abuse. *See, e.g.*, ECF No. 1, ¶ ¶ 15, 19, 40, 52, 59, 65, 66, 70, 72, 75, 77. Plaintiffs allege that this abuse included Defendants' use of "suicide smocks" to punish inmates without regard to whether the prisoner was suicidal. *See id.* ¶ 19, 28, 52, 65, 72. The allegations of the Complaint are organized by Plaintiff and detail the abuses allegedly endured by each. *Id.* ¶¶ 14-78. Many of the alleged abuses are specific to each Plaintiff, but the use of suicide smocks as punishment is common to all. For example, the Complaint alleges that, upon his intake into the VCP on May 27, 2023, Plaintiff Ambris was ordered to put on a "suicide smock," despite not evidencing any suicidal ideations. *Id.* ¶ 18. Ambris was informed that the use of this garment was "a new form of punishment at the direction of Defendants Smith and Scannell." *Id.*, ¶ 19. He was still wearing the same smock twelve days later when, on June 7, 2023, he was given a new one. *Id.*, ¶ 32. Ambris alleges that the use of this smock continued, including from October 11, 2023, until October 30, 2023. *Id.*, ¶ 40.

Plaintiff White similarly alleges that he was forced to wear the smock from October 13, 2023, until October 30, 2023, despite not exhibiting suicidal behavior. *Id.*, ¶ 49. Plaintiff Antramgarza also alleges that he was required to wear the smock as form of punishment even though he was not suicidal. *Id.*, ¶¶ 62-64. He further alleges that he was "tazed" as means to force him into the smock. *Id.*, ¶ 64. And Plaintiff Sanchez, who was Plaintiff Antramgarza's cellmate, alleges that, despite not having suicidal thoughts, he also was forced to wear the smock as punishment starting in April of 2023 and that he too was tazed. *Id.*, ¶¶ 71-73.

2

Although the incidents of abuse alleged by each Plaintiff occurred at different times, but all occurred during a confined period—between April 2023 and October 2023, or July 2024 if the latest date of any Plaintiff's incarceration at VCP is used. The participants in the alleged abuse also vary to some extent. For example, only Ambris identifies Corrections Officer Janidlo as the perpetrator of excessive physical force against him. But all Plaintiffs allege a pattern of misconduct sanctioned by identified policymakers, including the use of suicide smocks as punishment.

The Complaint presents the following eight counts:

| Count | Plaintiff | Against Defendants | Cause of Action/Claim |
|---|---|---|---|
| I | Ambris | Smith, Scannell, Janidlo | Eighth Amendment Cruel and Unusual Punishment[3] |
| II | Ambris | Venango County, Smith, Scannell, Janidlo | *Monell* and Supervisory Liability Claims |
| III | White | Smith, Scannell, Janidlo | Eighth Amendment Cruel and Unusual Punishment |
| IV | White | Venango County, Smith, Scannell, Janidlo | *Monell* and Supervisory Liability Claims |
| V | Antramgarza | Smith, Scannell, Janidlo | Eighth Amendment Cruel and Unusual Punishment |
| VI | Antramgarza | Venango County, Smith, Scannell, Janidlo | *Monell* and Supervisory Liability Claims |
| VII | Sanchez | Smith, Scannell, Janidlo | Eighth Amendment Cruel and Unusual Punishment |
| VIII | Sanchez | Venango County, Smith, Scannell, Janidlo | *Monell* and Supervisory Liability Claims |

The Defendants move to sever the claims of each Plaintiff into separate individual lawsuits. ECF No. 12. Plaintiffs have filed a response in opposition to the motion. ECF No. 16. The matter is ripe for decision.

---

[3] It is unclear whether, at the time of their confinement at VCP, the Plaintiffs were pretrial detainees or serving sentences following an adjudication of guilt. If they were pretrial detainees, their claims fall under the Due Process Clause of the Fourteenth Amendment. The Eighth Amendment applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977)).

II.   Legal Standard

Under Rule 20(a)(1) of the Federal Rules of Civil Procedure, multiple plaintiffs may permissibly join their claims in a single lawsuit if two conditions are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also Davis v. Neal*, 2023 WL 5289445, at *10 (D. Del. Aug. 17, 2023). Joinder of claims is "strongly encouraged," and district courts should "entertain[ ] the broadest possible scope of action consistent with fairness to the parties." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

III.   Discussion

Defendants contend that the initial prong of the permissive joinder analysis—requiring that the claims derive from the same transaction, occurrence, or connected series thereof—has not been satisfied. ECF No. 13, p. 4. This inquiry demands a nuanced, fact-specific analysis and hinges on whether the claims share a common factual nucleus. *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010). The term "transaction or occurrence" encompasses a flexible concept designed to capture claims that are factually interwoven. To meet this standard, the events in question must exhibit a "logical relationship" to each other. *See Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (citation omitted) (discussing the compulsory counterclaim rule under Fed. R. Civ. P. 13(a)). Courts interpret this "logical relationship" requirement broadly in the interest of judicial efficiency. *Id.* Such a connection is present when trying the claims separately would necessitate repetitive presentations of the same evidence or involve overlapping legal and factual issues, indicating that the claims are merely facets of a unified dispute. *Id.* at 389–90 (citation omitted); *see also Mosley v. Gen. Motors Corp.*,

4

497 F.2d 1330, 1333 (8th Cir. 1974) (emphasizing that Rule 20 is designed to avoid multiplicity of litigation where claims share common operative facts).

Applying this standard, courts allow claims to proceed jointly when they involve a pattern or practice of unlawful conduct. *See, e.g., Griggs v. Holt*, 2018 WL 5283448, at *11 (S.D. Ga. Oct. 24, 2018), *aff'd sub nom. Varner v. Shepard*, 11 F.4th 1252 (11th Cir. 2021); *Chimenti v. Pennsylvania Dep't of Corr.*, 2016 WL 1125580, at *17 (E.D. Pa. Mar. 21, 2016). For example, in *Griggs* the court denied the defendants' motion to sever where the complaint alleged "a pattern or practice at [a prison] of using excessive force solely to harm inmates" even though "each incident of excessive force occurred separately." 2018 WL 5283448, at *11. In *Chimenti*, the court denied the motion to sever where plaintiffs alleged a "DOC policy and practice" to deny necessary medical care to inmates, even though they had different medical conditions and were treated by different medical personnel at different times. 2016 WL 1125580, at *16-17.

Conversely, courts have deemed severance appropriate where the asserted claims span a broad array of subject matters lacking any meaningful logical connection. *See, e.g., Parkell v. Linsey*, 2017 WL 3485817, at 3–4 (D. Del. Aug. 14, 2017) (finding no logical relationship among claims involving an allegedly unlawful strip search, interference with legal mail, First Amendment religious discrimination, and inadequate medical care under the Eighth Amendment); *Crichlow v. Doe*, 2012 WL 1673004, at 2 (D. Del. May 11, 2012) (similar); *Drumgo v. Burris*, 2012 WL 1657196, at 2 (D. Del. May 9, 2012) (similar). In *Fatir v. Markell*, for example, the court severed claims where the plaintiff alleged religious discrimination, unconstitutional conditions of confinement, inadequate medical treatment, improper postal fees, and denial of good time credits. *See* 2016 WL 5946870, at *5 (D. Del. Oct. 12, 2016). Given the disparate nature of those claims and their supporting allegations, the court found severance appropriate because there was little

logical relationship between, for instance, the plaintiff's claims concerning medical care and those concerning sentence computation or postage fees. *Id.* The court likewise found little logical relationship between the plaintiff's claims based on a denial of medical attention and the denial of good time credits. *Id.*

In this case, the allegations and claims of each Plaintiff relate to an alleged prison policy, endorsed by Smith and Scannell, the implementation of which resulted in a pattern of related abuse. *See* ECF No. 1, ¶ 19. The Complaint details repeated incidents of abuse of the Plaintiffs that occurred primarily between April 2023 and October 2023, which plausibly support a pattern. *Id.* ¶¶ 14, 61. The Complaint also includes allegations that certain Defendants acted in concert during incidents of abuse. *See, e.g., id.* ¶¶ 44 (Janidlo and Scannell against Ambris); *id.*, ¶¶ 64-66 (Defendants Smith and Scannell against Antramgarza and Sanchez); *id.* ¶ 72 (same); *id.* ¶ 52 (Defendants Scannell and Smith against White). Thus, the claims represent a series of occurrences that satisfy the first element of Rule 20. *See also Davis v. Neal*, 2023 WL 5289445, at *10–11 (D. Del. Aug. 17, 2023).

Defendants also dispute that the Complaint supports a question of fact or law common to all Plaintiffs to satisfy the second element of Rule 20(a)(1). *See* ECF No. 13, p. 4. They argue that although some of the allegations of abuse are similar, they occurred at different times and under differing circumstances. *Id.* As such, Defendants contend, each Plaintiff's claims will require different witnesses and other evidence, making severance necessary. But the Complaint alleges that Smith, Scannell and Janidlo each knew about and acquiesced in the ongoing abuse, and even participated in certain aspects of it. *See, e.g.*, ECF No. 1, ¶¶ 15, 16, 19, 28, 40, 52, 53, 65, 66, 70, 77. These allegations raise common questions of fact and law regarding whether a policy or practice existed at VCP and the extent to which that policy or practice caused each

Plaintiff's constitutional injury. Plaintiffs' claims will require resolution of factual and legal issues regarding what Smith, Scannell, and Janidlo knew, how they responded to information of abuse, and whether their actions amounted to deliberate indifference. These common questions satisfy the second element of Rule 20(a)(1). *See, e.g., Cooper*, 266 F.R.D. at 90 (noting that the threshold for the commonality requirement is very low).

IV.   Conclusion

Because the allegations of Plaintiffs' Complaint support both requirements of Rule 20(a)(1), the Court will deny Defendants' motion to sever each Plaintiff's claims.

A separate Order will follow.

DATED this 25th day of June, 2025.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE